IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN R.,[1]                                                   No. 6:22-cv-01964-JR

                Plaintiff,                         OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.


RUSSO, Magistrate Judge:

      Plaintiff John R. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying his application for Title II

Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social

Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final

orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

ECF No. 17. For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Born in August 1980, plaintiff alleges disability beginning June 15, 2014, with a date last insured of September 30, 2020. Tr. 226-29, 239-45. Plaintiff alleges disability due to bipolar disorder. Tr. 251. His application was denied initially and upon reconsideration. Tr. 121-29, 137-54. On November 2, 2021, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") Sue Leise. Tr. 30-70. On December 29, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 10-29. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since June 15, 2014, the alleged onset date. Tr. 16. At step two, the ALJ determined plaintiff's bipolar disorder was medically determinable and severe: Tr. 16. At step three, the ALJ found plaintiff's impairment, did not meet or equal the requirements of a listed impairment. Tr. 17.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how his impairment affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform a full range of light work except:

> [H]e can do no climbing ladders, ropes, or scaffolds, and no work around hazards such as unprotected heights and dangerous machinery. He is able to remember, understand, and carry out routine, repetitive tasks or instructions that can be learned within a period of 30 days or by demonstration consistent with occupations of SVP 1 or 2. He can perform work that requires only simple, work related decisions and there are few, if any workplace changes. He can work in proximity to co-workers but should not perform tasks that requires teamwork, and no public interaction.

Tr. 18.

At step four, the ALJ found plaintiff capable of performing past relevant work as a kitchen helper and dining room attendant. Tr. 22. Alternatively, at step five, the ALJ determined that plaintiff was capable of performing jobs existing in significant numbers in the national economy such as industrial cleaner, hand packager, and agricultural produce sorter. Tr. 23. The ALJ therefore found plaintiff not disabled. Tr. 23-24.

## DISCUSSION

Plaintiff argues the ALJ committed three harmful errors in her written opinion. He contends the ALJ erred by (1) improperly rejecting his symptom testimony, (2) failing to provide a germane reason to reject his mother's lay witness testimony, and (3) improperly evaluating Jennifer Stevens, NP, and Thomas Potter, PhD,'s medical opinions. For the reasons that follow, the Court finds the ALJ erred, reverses, and remands for further proceedings.

I.      **Symptom Testimony**

Plaintiff contends the ALJ erred by discrediting his subjective symptom testimony without clear and convincing reasons for doing so. Pl.'s Br., ECF No. 11 at 14-18. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the

ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified he continued to live with his mother, brother, and stepfather. Tr. 37. He slept from 3:00 a.m. to 3:00 p.m. Tr. 41. He spent most of his time watching television. Tr. 41. He did laundry once a week and went to the grocery store with his mother. Tr. 42. He had a hard time being in the store because he believed people were staring at him. Tr. 50. He tried to go to the store only when there were not many people around. Tr. 50. He talked to his mother when he felt depressed. Tr. 43. He found his medication to be helpful, but he continued to experience mental symptoms. Tr. 43, 49. His medications helped him sleep, which improved his hallucinations. Tr. 48-49. However, he continued to feel paranoid. Tr. 43, 49. He stated, "I try not to go much further than town. It's only two miles away. I try to avoid seeing them as much as possible." Tr. 43. He had a hard time following directions and working at other people's pace. Tr. 44, 47. He became dizzy and would sweat around other people. Tr. 44, 47. Seeing his psychiatrist triggered his bipolar disorder; he had a hard time talking about his

depression. Tr. 45. He liked to be left alone. Tr. 49. He had a hard time working with other people because he felt like they were watching him. Tr. 50. He would hear voices when he was around coworkers. Tr. 51.

Plaintiff repeated many of these allegations in written testimony. He reported that he is paranoid around other people and had delusional thoughts about people trying to kill him. Tr. 259. He had difficulty sleeping and was "very depressed." Tr. 259. In a typical day, he had coffee; did chores, "such as taking out garbage, dishes, ma[d]e [his] bed"; and watched television. Tr. 260. He was able to prepare simple meals, such as sandwiches and frozen dinners. Tr. 261. He reported a loss of interest in hobbies and activities. Tr. 263. He did not socialize. Tr. 263. He could not "be around people anymore." Tr. 264. His condition impacted his memory and his ability to complete tasks, concentrate, understand, and follow instructions. Tr. 264. He did not handle stress or changes in routine well. Tr. 265.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 19. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 19. Specifically, the ALJ discounted plaintiff's symptom allegations because they were "inconsistent with the overall record." Tr. 19-20.

Conflict with the medical record was not a clear and convincing reason to discount plaintiff's symptom testimony because the ALJ cited only temporary improvements in his mental health without considering the record as a whole. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). But as the Ninth Circuit has emphasized, "[c]ycles of improvement and

debilitating [mental] symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. *Garrison*, 759 F.3d at 1017-18. At the hearing, plaintiff testified about symptoms like paranoia, difficulty following directions, depression, and difficulty concentrating that persisted despite treatment for bipolar disorder. *See, e.g.*, Tr. 45-50, 264. The ALJ found plaintiff had "reported mostly stable moods ever since starting medication" and that his "mental status examination was essentially normal." Tr. 29 (identifying records showing intermittent improvement). The ALJ specifically emphasized plaintiff's ability to speak with a normal tone, maintain good concentration, and ability to seek help when he ran out of medications. Tr. 19. A review of the record as a whole, however, reveals that plaintiff's mental health waxed and waned between 2014 and 2020, and that many of plaintiff's mental health symptoms persisted despite treatment. *Compare* Pl. Br at 10-12 (citing medical records documenting ongoing mental health symptoms) *with* Def. Br. at 2-3 (citing sporadic medical records showing medication was "helping" and that plaintiff denied hallucinations). In particular, plaintiff reported ongoing paranoia and nervousness around others despite improved hallucinations and delusions from medication. Tr. 846-47. The medical record likewise shows his depression and difficulty being around others persisted despite medication. *See* Tr. 508, 635. These aspects of the medical record—which the ALJ failed to cite—all directly support plaintiff's testimony. In sum, when viewed in the context of the record as whole, the ALJ improperly cherry-picked cycles of improvement as a reason to reject plaintiff's subjective symptom testimony about his mental health. Thus, the ALJ did not provide clear and convincing reasons for rejecting plaintiff's testimony.

## II.    Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

Plaintiff's mother completed a questionnaire describing that plaintiff was unable to be around people because it caused him to have severe panic attacks. Tr. 277. His condition affected his ability to sleep. Tr. 278. He was limited because of depression. Tr. 279. He was able to do household chores when asked. Tr. 279. He was unable to look at other people. Tr. 281. He believed that people were talking about him when he did look at them. Tr. 281. He only spent

time with his family; he did not go out on a regular basis. Tr. 281. He did not handle stress or

changes in routine well. Tr. 283. When asked to describe any unusual behaviors or fears plaintiff

exhibited, his mother responded, "He was scared someone was going to cut his throat and Hitler

was after him. [He] also said lighting [sic] went down his back. He was so scared he had to sleep

with me." Tr. 283.

At the hearing, plaintiff's mother testified that his medication had helped over the past

four years, but that it "didn't fix him all the way." Tr. 55. When they went to the store, plaintiff

wore a hoodie up so that other people could not see him. Tr. 56. He did not look at people,

including his mother, when he spoke to them. Tr. 56. He spent his days watching television and

walking the dog in the field on their property. Tr. 56. His mother did not believe he could work

because he was unable to look at people. Tr. 56. He became nervous and tongue-tied around

others. Tr. 57. His mother described it as a panic attack. Tr. 57.

The ALJ did not provide a germane reason for rejecting this testimony, and it was error

for her to fail to do so. Although defendant suggests it is an "open question" whether ALJs are

still required to consider lay witness evidence under the revised regulations, *Fryer v. Kijakazi*,

2022 WL 17958630 at *3 n.1 (9th Cir. Dec. 27, 2022) (unpublished), this Court still requires

ALJs to provide germane reasons for dismissing lay witness testimony. *Nichole M. v. Comm'r,*

*Soc. Sec. Admin.*, 2023 WL 2889777, at *8 (D. Or. Apr. 11, 2023). The ALJ briefly

acknowledged that plaintiff's mother provided lay testimony, and stated that she "considered this

report when making the determination." Tr. 21. The ALJ did not provide any reason, let alone a

germane one, for disregarding plaintiff's mother's testimony, however, and therefore erred.

Defendant argues the error was harmless because plaintiff's mother's testimony mirrored his

own, and the ALJ offered justifications for discounting plaintiff's testimony. Def. Br. at 6. As

discussed above, however, the ALJ failed to supply legally sufficient reasons for rejecting plaintiff's subjective complaints, so those rationales cannot cover for her failure to address the lay witness testimony.

### III. Medical Opinion Evidence

Plaintiff also argues that the ALJ erred when finding the medical opinions of NP Stevens and Dr. Potter less than fully persuasive. Pl. Br. at 5-14. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

*A. NP Jennifer Stevens*

In September 2020, NP Stevens reported in a written statement that she had treated plaintiff for a year, and that he had been a patient at her clinic for over three years. Tr. 663. NP Stevens saw plaintiff every three to four months. Tr. 663. He was diagnosed with bipolar I disorder with psychotic features. Tr. 663. His symptoms included history of mania, auditory hallucinations, mood irregularities, and depression. Tr. 663. Treatment included Olanzapine and Wellbutrin. Tr. 663. Medical findings included flat affect, avoiding eye contact, and difficulty interacting with others. Tr. 663.

NP Stevens reported that plaintiff was medically stationary. Tr. 663. She noted that he frequently experienced emotional lability; perceptual disturbances; blunt, flat, or inappropriate affect; social withdrawal or isolation; manic syndrome; illogical thinking or loosening of associations; anhedonia or pervasive loss of interests; delusions or hallucinations; oddities of thought, perception, speech, or behavior; and psychomotor agitation or retardation. Tr. 664. She reported that plaintiff's symptoms would likely produce both "good days" and "bad days." Tr. 664. NP Stevens assessed moderate limitation in plaintiff's ability to perform activities of daily living. Tr. 665. She assessed marked limitation in plaintiff's ability to report to work on time; follow basic instructions; stay on task; and complete tasks in a timely manner secondary to deficiencies in concentration, persistence, or pace. Tr. 665. NP Stevens opined that plaintiff was expected to have a marked degree of monthly episodes of deterioration or decompensation in work-like settings. Tr. 665. She assessed extreme limitation in plaintiff's ability to deal with normal work stress, work in coordination with others, and maintain social function. Tr. 665. She opined that plaintiff would be off task at least 25% of a typical workday, and that he would miss more than three workdays per month. Tr. 665. She noted that plaintiff 's impairments, as

demonstrated by clinical findings, were reasonably consistent with the symptoms and functional limitations described in her opinion. Tr. 665. She did not believe that plaintiff was capable of maintaining a full-time job on a regular and continuing basis. Tr. 665.

The ALJ found NP Stevens' opinion unpersuasive "because it is far more restrictive than the evidence suggests." Tr. 21. The ALJ relied on several aspects of the medical record she found inconsistent with NP Stevens' opinion, such as plaintiff's improvement with treatment and an "essentially normal" mental status exam. Tr. 21.

The ALJ failed to support her decision to find NP Stevens' opinion unpersuasive with substantial evidence because her consistency analysis did not undermine any of NP Stevens' conclusions.[2] The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ highlighted a few purported inconsistencies between NP Stevens' opinion and the record, but failed to cite records that provide substantial evidence undermining the persuasiveness of her conclusions. Tr. 21. For example, the ALJ noted that plaintiff had a stable and improved mood on medication, with no hallucinations. Tr. 21. She also highlighted that his mood, concentration, and memory all improved when he was receiving medication treatment. Tr. 21. What the ALJ does not address, is that NP Stevens' opinion found plaintiff limited even when he is on medication, even though he may have temporary improvements in mood, concentration, memory, and hallucination. *See, e.g.,* Tr. 664. NP Stevens also emphasized that plaintiff's condition comes and goes—that he would have "good days" and "bad days"—and

---

[2] The ALJ failed to analyze the supportability of NP Stevens' opinion. Tr. 21; *see also* Def Br. at 4-5 (failing to identify anywhere in the written opinion where the ALJ evaluates the strength of the evidence upon which NP Stevens' opinion relies). This was error. 20 C.F.R § 404.1520c(b)(2). On remand, the ALJ should not only perform a sufficient consistency analysis, but also describe how she evaluated the supportability of NP Stevens' opinion.

that the "bad days" were the ones that would prevent him from working full time. Tr. 664-65. NP
Stevens also addressed how plaintiff would continue to have difficulty working close to others,
which the ALJ does not address. Tr. 21. Ultimately, the ALJ highlighted some evidence that
plaintiff's bipolar condition improved with treatment, but did not cite substantial evidence
inconsistent with NP Stevens' opinion. On remand, the ALJ must consider both the
supportability of NP Stevens' opinion, and perform a consistency analysis that accounts for both
NP Stevens' opinions of plaintiff's limitations *despite* medication, and the entirety of the record
showing how plaintiff's mental health symptoms wax and wane.

   *B. Dr. Thomas Potter, PhD*

   Plaintiff saw Dr. Potter in March 2021 for a consultative psychodiagnostic evaluation. Tr.
846. Dr. Potter based his opinion on a clinical interview, the review of available medical records,
and a mental status examination. Tr. 846. Plaintiff reported that he began experiencing psychotic
features in 2017. Tr. 848. His mental symptoms continued to affect his functioning daily. Tr.
846. He stated, "[I'm] constantly nervous, hallucinate, can't work with others." Tr. 846. His
hallucinations had improved with medication. Tr. 847. He endorsed suicidal ideation that comes
and goes. Tr. 847. He endorsed a history of unusual fatigue. Tr. 847. He had been living with his
mother, sister, and stepfather for three years. Tr. 847. He reported feeling helpless, off and on,
for about two hours a day for the past four years. Tr. 848. He felt like giving up, had a hard time
driving, and had poor hygiene. Tr. 848. He completed hygiene tasks about two times a month.
Tr. 849. He completed household maintenance tasks about twice a month during the summer. Tr.
849. He completed household chores about once a month; however, his mother handled most of
these tasks. Tr. 849. He drove about once a month. Tr. 849. He slept from 3:00 a.m. to 3:00 p.m.
Tr. 849. He otherwise spent his time visiting with his mother and watching television. Tr. 849.

Dr. Potter noted that plaintiff was alert, with clear and coherent thinking. Tr. 846. He was able to complete a simple three-stage command. Tr. 846. He was able to write a complete sentence, but he was not able to copy interlocking pentagrams correctly. Tr. 847. He was able to correctly spell the word "world" forward and backward. Tr. 847. He completed serial threes with one error. Tr. 847. He completed serial sevens, slowly, with one error. Tr. 847. His intellectual abilities appeared to be low average. Tr. 847. His ability to abstract was poor. Tr. 847. His insight was poor to fair, and his judgment was fair. Tr. 847. His mood was calm, and his affect was congruent. Tr. 847. He scored a 24/30 on the mini mental status examination, which indicated possible mild cognitive impairment. Tr. 847.

Dr. Potter diagnosed bipolar I disorder with psychotic features. Tr. 849. He opined that plaintiff may have difficulty understanding and completing some simple instructions based on examination findings. Tr. 849-50. Plaintiff's concentration, attention, and persistence were considered adequately sustained. Tr. 850. He demonstrated moderate social skills to sustain workplace relationships. Tr. 850.

The ALJ found Dr. Potter's opinion unpersuasive "because the claimant's overall records indicate that he is capable of unskilled work." Tr. 21. The ALJ reasoned that "[m]ental status exams revealed normal attention and concentration, normal thoughts, speech, and memory, even though there were times when he had anxious moods, avoided eye contact, and paranoid thoughts." Tr 21.

As addressed above concerning NP Stevens, the ALJ failed to account for the chronological medical record in her consistency analysis of Dr. Potter's opinion. As the Ninth Circuit has made clear, "[c]ycles of improvement and debilitating symptoms are a common occurrence" in cases involving mental illness. *Garrison*, 759 F.3d at 1017. Additionally, reports

of "improvement" in the context of mental health issues "must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.* The ALJ failed to heed the Ninth Circuit's instruction and take the full medical record into account. First, Dr. Potter evaluated plaintiff during a period of stability, suggesting his symptoms were often much worse during the relevant period than Dr. Potter described. *See* Tr. 636 (determining that plaintiff's bipolar disorder was stable in January 2021, a couple of months before Dr. Potter examined him). And again, the record as a whole does not show plaintiff was "capable of unskilled work," as the ALJ asserted. Tr. 21. Plaintiff lived with his mother after his "total breakdown," and she accompanied him outside the home, managed the household chores, and provided support and information in medical appointments. *See, e.g.,* Tr. 528, 508, 506, 405, 475, 414, 418, 849, 42-43. Given this evidence, the ALJ's conclusory finding that Dr. Potter's opinion was less than fully persuasive because plaintiff "is capable of unskilled work" is not supported by substantial evidence. On remand, the ALJ must analyze the supportability of Dr. Potter's opinion, and fully consider the consistency of his opinion about what plaintiff can do despite the benefits of treatment with the overall record.

## IV.    Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a

"credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed harmful errors by failing to provide specific, clear, and convincing reasons to reject plaintiff's subjective symptom testimony, failing to give germane reasons to reject the lay witness testimony, and by failing to support her decision to find NP Stevens and Dr. Potter's opinions unpersuasive with substantial evidence. After reviewing the record, however, conflicts and ambiguities remain between the medical record and plaintiff's allegations that his bipolar disorder rendered him totally unable to work during the relevant period. The Commissioner's decision is reversed, and this case is remanded for further proceedings so that the ALJ can adequately evaluate plaintiff's testimony, the lay witness testimony, and NP Stevens

and Dr. Potter's medical opinions, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

IT IS SO ORDERED.

DATED: October 1, 2024

    /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge